## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

MEIJER, INC. and MEIJER DISTRIBUTION, INC. on behalf of themselves and all others similarly situated,

Plaintiffs

v.

RANBAXY INC., RANBAXY LABORATORIES, LTD., RANBAXY U.S.A., INC. AND SUN PHARMACEUTICAL INDUSTRIES LTD.,

Defendants

Case No.: 15-cv-11828-NMG

## [PROPOSED] ORDER
## ESTABLISHING PROTOCOL ON ELECTRONICALLY STORED INFORMATION

This Protocol (the "ESI Protocol") shall apply to all discovery of electronically stored information ("ESI") in this matter.  It may be supplemented or amended by subsequent agreement of the parties in light of further developments, including but not limited to the parties' decisions concerning the engagement of third party document vendors.

The Parties shall meet and confer in good faith on any issue arising under this ESI Protocol.  In the event the Parties cannot reach an agreement on a disputed matter, the Parties may bring the matter to the Court's attention.

I.   **DEFINITIONS**

    A.   **"Electronically stored information"** or **"ESI,"** as used herein, shall have the meaning contemplated in the Federal Rules of Civil Procedure and applicable case law.

    B.   **"Native data format"** means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

C.      "**Metadata**" means (i) information associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage or validity of the electronic file or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

D.      "**Static Image**" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

E.      "**Documents**" shall have the meaning contemplated in the Federal Rules of Civil Procedure and applicable case law.

F.      "**Media**" means an object or device, including but not limited to a disc, tape, drive, computer or other device, whether or not in the producing party's physical possession, on which data is or was stored.

G.      "**Parties**" means or refers to the named plaintiffs and defendant in the above-captioned matter, as well as any later added plaintiffs and defendants.

H.      "**Load/Unitization file**" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file will also contain data relevant to the individual Documents, including extracted and user-created metadata.

## II.    SEARCH TERMS FOR ELECTRONIC DOCUMENTS

The Parties agree to the use of reasonable key word searches, incorporating the search terms, custodians, sources, and date ranges (as determined by the process described below) as a means to identify relevant ESI for review and production. Notwithstanding the foregoing, the fact that a document may have been retrieved by application of agreed upon search terms shall not prevent any Party from withholding from production such document for lack of responsiveness, privilege, or other permissible objection.

Notwithstanding the foregoing, to the extent any Party identifies responsive ESI not hit upon by the filters noted above, all such non-privileged documents must be produced, subject to the Parties' objections to discovery requests.

The parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate search terms, custodians, and potentially relevant noncustodial sources in advance of any ESI search.  With the objective of limiting the scope of review and production, and thereby reducing discovery burdens, the parties agree to meet and confer as early as possible, and in advance of any search that results in production of documents, with a view to facilitating production in accordance with the deadlines established by the Court while minimizing the need for motions practice.  During that meet and confer process:

Each Producing Party shall provide all proposed search terms that it believes would lead to the identification of relevant documents (including any known semantic synonyms, acronyms, abbreviations, non language alphanumeric references, nicknames, or other terms likely to lead to the identification of relevant or responsive documents), to be used when searching for ESI responsive to the Requesting Party's document requests.

Each Producing Party shall (a) identify its own proposed individual and departmental custodians (including title for any individual custodians); and (b) produce reasonably accessible, existing organizational charts relating to departments within the Party's organization in which the proposed custodians work.

Each Producing Party shall disclose all ESI storage systems or devices known to contain, or reasonably believed to contain, responsive ESI.

3

If any Requesting Party believes that additional search terms, custodians, or sources may be necessary to identify documents responsive to its requests, they may propose such additional items, and the parties will meet and confer.

Notwithstanding the foregoing, the parties may approach the Court with disputes concerning search term selection and testing, if any, on any date after November 14, 2016.

Nothing in this protocol shall operate to limit or expand a party's obligations under the Federal Rules of Civil Procedure and applicable decisional authority.

Nothing in this ESI protocol shall waive in whole or in part any objection raised by a party in its written responses to specific discovery requests served in this action.

This provision does not prevent any party from undertaking searches of its own ESI for its own purposes at any time.

## III.   FORMAT OF PRODUCTION

### A.   Document Image Format.

1.      With the exception of databases discussed in Section III.L and ESI discussed in Section III.B below or unless otherwise agreed to in writing by a requesting party, at the non-reimbursable and non-taxable cost of the producing party, ESI shall be produced electronically as a single-page "TIFF" image in single page Group IV .tif format with a view to achieving an image that is substantially similar to how the source document would have appeared if printed out to a printer attached to a computer viewing the file.

2.      When a document not produced in native format has tracked changes or hidden text (*i.e.,* "notes" in a PowerPoint slide) associated with it, the parties will produce the document in a form showing the tracked changes, subject to any claims of privilege.

3.      Load files of the static images shall be created and produced together with their associated static images to facilitate the use of the produced images by a document management or litigation support database system.

4.      The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

**B.      Native File Format.**

1.      Notwithstanding the language of Federal Rule of Civil Procedure 34(b)(1)(C) providing that the requesting party is entitled to specify the form in which ESI is to be produced, the parties agree that only spreadsheets (*e.g.,* Excel files), presentations (*e.g.,* PowerPoint files), audio files, and video files must be produced in native format.

Further, if production of any other document(s) in native format is believed necessary to decipher the meaning, context, or content of a document produced in the document image format agreed pursuant to paragraph III.A, the producing party will promptly honor requests made in good faith for the production of the document in native format; *provided, however,* that the producing party reserves the right to seek appropriate relief from the Court from such requests if deemed unduly burdensome.

2.      If any document to be produced in native format contains redactions for privilege, that document may be produced in TIFF format as described herein, with the privileged information redacted from the image.

**C.      Production of Physical Documents.**

Documents or records which either were originally generated as or converted into ESI but now only exist in physical hard-copy format, or documents or records that were originally

generated in hard-copy format, shall be converted to the document image format agreed pursuant

to paragraph III.A and produced following the same protocols set forth herein or otherwise

agreed to by the parties.

**D.      Document Unitization.**

To the extent possible, the unitization of a produced document shall be maintained as it

existed in the original file or computer of the producing party.  If unitization cannot be

maintained, the original unitization shall be documented in the associated load file or otherwise

electronically tracked.

The producing party shall produce a unitization file ("load file") for all produced

documents in accordance with the following formatting.

**OCR and Extracted Text Files (.TXT Files):**

- Single text file per document containing all the document's pages
- Filenames should be of the form:
- <Bates num>.txt
    - Where <Bates num> is the BATES number of the first page in the document.
- Text must be encoded in UTF-8.

**Images Files:**

- Single page per image
- TIFF is default FORMAT unless color or grayscale image is necessary, then .JPG would be acceptable
- Filenames should be of the form:
  <Bates num>.<ext>
    - Where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif).

**Index Files:**

- "Concordance Default" delimited text file utilizing the following characters:
    - The "comma" delimiter is "¸"(020)
    - The "quote" delimiter is "Þ" (254)
    - The "new line- delimiter is "®" (174)
- First line must contain the column/field names (set forth in Paragraph 1(c) herein)
- Every row must have the same number of columns/fields (empty values are acceptable)

- Text must be encoded in UTF-8

Notwithstanding the foregoing, the parties agree to further meet and confer, as necessary, in advance of any production of documents, and in consultation with their respective vendors, to confirm all load file specifications.

### E.  Duplicates.

To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values) reside within a party's ESI data set, each party may produce only a single copy of a responsive document or record ("Single Production Copy") provided that the load file accompanying the production in question contains a field listing the custodians of each of the non-produced duplicates. Exact duplicate shall mean bit-for-bit identicality of the document content. For exact duplicate documents, the producing party will produce the metadata described in section III.K herein for the Single Production Copy. If requested with respect to specifically identified documents, the parties will produce in a timely manner filesystem-level metadata for the non-produced duplicates of the Single Production Copy. Where duplicate documents have attachments, hash values must be identical for the document-plus-attachment (including associated metadata).

### F.  Color.

At the producing party's option, ESI reduced to TIFF may be produced in black and white in the first instance. Notwithstanding the foregoing, the producing party will endeavor to produce in color any ESI reduced to TIFF that contains color in instances where the color contributes to meaning, context, or content of the document. In addition, the producing party will honor reasonable requests made in good faith for either the production of the original document for inspection and copying or production of a color image of the document. Color

production when reasonably necessary and requested will be at the non-reimbursable and non-taxable cost of the producing party, unless otherwise agreed to in writing by a requesting party.

### G.    Redactions.

To the extent that a responsive document contains privacy data or privileged content, the Producing Party may produce that document in a redacted form.  No other redactions are permissible.  Any redactions shall be clearly indicated on the face of the document and each page of the document from which information is redacted shall bear the designation "Redacted – Privacy" (for privacy redactions) or "Redacted" (for privilege redactions), indicating that it has been redacted.  Where a document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material and produce the remainder of the document as redacted.

### H.    Bates Numbering and Other Unique Identifiers.

For files produced in the document image format agreed pursuant to paragraph III.A, each page of a produced document, at the non-reimbursable and non-taxable cost of the producing party unless otherwise agreed to in writing by a requesting party, shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image in such a manner that information from the source document is not obliterated, concealed, or interfered with.  There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of a Protective Order entered by this Court in this litigation, or has been redacted for privilege in accordance with applicable law or Court order, in which case a designation may be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.  A party producing ESI in native data format shall identify that file with a unique Bates number and

appropriate confidentiality designation reflecting the confidentiality of the information contained therein.

### I.   Production Media.

Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), file transfer software, or such other readily accessible computer or electronic media as the parties may hereafter agree upon. The producing party shall accompany all document productions with a letter identifying the custodians from whose files newly produced documents were drawn. For the avoidance of doubt this requirement shall not apply to documents described in Part III.M below.

### J.   Electronic Text Files.

For files produced as TIFF images, text files for produced documents shall be produced reflecting the full text that has been electronically extracted from the original, native electronic files ("Extracted Text") or OCR text files for documents without extractable text and for documents redacted for privilege.

The text files will be named with the unique Bates number of the first page of the corresponding document followed by the extension ".txt."

### K.   Metadata.

The parties agree that they will produce the following metadata (to the extent it exists):

- Bates number (including the document start and document end numbers). This should use the standard Bates number in accordance with those used in previous productions.
- BegDoc
- EndDoc
- BeginAttach
- EndAttach
- Page count
- Doc Extension
- Doc Title
- Email Subject, if any

- Confidentiality designation
- Sent/Date and Time (for Emails only)
- App Last Modified Date and Time (for E-docs);
- App Created Date and Time (for E-docs)
- Date created
- Time created
- Last modified date
- Last modified time
- Last accessed date
- Last accessed time
- Received Date and Time (for Emails only)
- From (for Emails)
- Author (for Edocs)
- Recipients
- cc:
- bcc:
- Custodian
- Duplicate custodian(s)
- Hash Value
- Original File Name
- NativeLink (including for any native files produced without accompanying TIFF images).
- Link to text file

When a metadata field includes a date, the date shall be provided in the following format: mm/dd/yyyy HH:mm:ssZ.

Notwithstanding the foregoing, the parties will meet and confer in good faith prior to the production of documents, with technical experts as needed, to clarify or resolve any issues (e.g., definitions of metadata fields, inconsistencies, burden) concerning the production of metadata.

**L.      Family Relationships of ESI.**

Parent-child relationships between ESI (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document) must be preserved by assigning sequential Bates numbers to all files within the parent-child group and providing accurate ranges (*i.e.,* "BeginAttach," "EndAttach," "BegDoc," and "EndDoc" or the functional equivalent of such field) for those files in the attachment ranges provided, if such

10

ranges can be provided electronically at reasonable cost by the document vendor. Embedded files produced as attachments should be user generated content, including but not limited to Microsoft Word, Excel, PowerPoint, Outlook or similar operating system equivalent applications such as iWork (e.g. Pages, Numbers, Keynote); and PDF. Ubiquitous embedded files, such as logos and v-cards, may be suppressed.

**M.      Structured data.**

To the extent a response to discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the parties agree to meet and confer with a view to assisting the producing party to develop a set of queries capable of generating a report that meets that party's obligations under the Federal Rules of Civil Procedure. Upon review of the report(s), the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

**N.      Documents produced in prior proceedings.**

1.      Notwithstanding any other provision of this ESI Protocol, the parties agree that, to the extent that discovery is sought of documents or data that has already been produced in a prior proceeding, those documents and data may be produced in the same format as they were produced in that prior proceeding. No party shall be required to produce such documents or data in a different document image format, with different or additional metadata, with different confidentiality markings or redactions, or in any other manner that differs from the format used when the documents or data were produced in the prior proceeding.

2.      *Provided, however,* that if the prior production materials cannot be re-produced with at least basic metadata/objective coding (*i.e.,* Document Date, Custodian, Author,

Document Type, etc.), the parties shall meet and confer in good faith to reach a compromise solution.

3.    If materials are being produced from a prior litigation or administrative proceeding, the Producing Party shall identify the specific litigation or proceeding in which each document was previously produced, as well as the entity that produced it.  If the prior production contained a unique Bates stream, it is sufficient for the Producing Party to identify the prior productions with reference to that Bates stream.  For example, if documents being produced in this litigation bear a prior Bates stream of "ABC-xxxxxx" the Producing Party can identify the prior proceeding(s) in which such documents were producing by disclosing that all documents bearing a Bates stamp of "ABC-xxxxxx" reflect documents produced by Party A in litigation Y.

## IV.    OBJECTIONS TO ESI PRODUCTION

A.    For files produced in the document image format agreed pursuant to paragraph III.A, documents that present imaging or form production problems shall be promptly identified and disclosed to the requesting party; the parties shall then meet and confer to attempt to resolve the problems.

B.    If either party objects to producing the requested ESI on the grounds that such information is not reasonably accessible because of undue burden or cost, or because production in the requested format is asserted to be not reasonably accessible because of undue burden or cost, the party, at or before the time the production is due under the Federal Rules of Civil Procedure, shall describe the nature of the objection with reasonable particularity and indicate whether the producing party is willing to offer an alternative.  The parties will promptly meet and confer in an attempt to resolve the objections if necessary.

## V.    DESIGNATED ESI LIAISON

Each party shall designate an individual(s) to act as e-discovery liaison(s) for purposes of attending court hearings on the subject ("Designated ESI Liaison").  The Designated ESI Liaison must:

(a)    be knowledgeable about the party's e-discovery efforts;

(b)    be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

(c)    be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues and relevant information retrieval technology, including search methodology.

**SO ORDERED:**

Nathaniel M. Gorton
UNITED STATES DISTRICT JUDGE

Dated: _Sept. 28_ , 2016

13